## RANDOLPH *versus* PERRY.

Where there is a subsisting contract in writing, between parties, adequate to determine their rights; and under which work has been completed, it will not be permitted for one of those parties, to set up a new parol agreement, without consideration, varying the first, and changing its terms and conditions.

The statute of 1807, restricting the charge for attendance, in any bill of costs; of more than two witnesses to any one fact, must be understood, to mean such facts as are material, and which may necessarily arise in the progress of a cause, either incidentally, collaterally, or directly upon the issue, and it seems, not to have been the intention, to disallow the attendance of witnesses to the successful party, where, from the course of the adversary, or the decision of the Court, the evidence of such witnesses (otherwise proper) has been superseded, or dispensed with.

Assumpsit in the Circuit Court of Greene. The plaintiff below, Perry, declared for work and labor done and performed at the instance and request of

defendant, and there was a verdict for the plaintiff. On the trial, a written agreement for the performance of work at specified prices, was given in evidence, as also a memorandum signed by the parties, explaining some intended alterations in the plan of the work, and particularly referring to the first contract.

The Court then permitted the plaintiff to show by parol testimony, that the work had been performed in a mode superior to that stipulated in the agreement; and that the defendant had consented to abandon the prices therein specified, and to resort to other charges differing from those first agreed upon.

The defendant, subsequent to verdict, required the Court, to instruct the clerk to exclude from the bill of costs, the taxation of charges for attendance of sundry of plaintiff's witnesses, on the ground, that all the witnesses subpœnæd and in attendance, had not been examined on the trial; which the Court refused.

On these points, by bill of exceptions, the case came into this Court.

STEWART, for Plaintiff in error.—Here the written agreement is proposed to be varied by proof from which a different understanding might be inferred. It does not seem to have been proof of another contract, but proof from which a different contract may have been inferred. At most, a contract cannot be done away but by a contract. The introduction of such loose verbal evidence, to vary a written agreement, as was here proposed, cannot be admitted. Besides, as to the second agreement, if any such existed, it was *nudum pactum;* there was no consideration to support it.

A consideration is indeed attempted to be established. There was on the part of Perry an offer to prove that some of the work was done in a superior style; but this at most could only be in the nature of a *past* consideration; and to make such a consideration binding, it must be done at the request of the party benefitted.—1 *Sand. Pl. & Ev.* 171, 172, 173—*Comyn Con.* 27, 291—2 *Marsh.* 57. Here there was no proof that Randolph requested that the work should be done in a different style from that first agreed upon.

We also contend that the Court erred in the taxation of costs. There were sixteen witnesses summoned by the plaintiff, and only four of them examined. We moved the Court to include only the witnesses who were examined; which the Court refused. This, we contend, was error.

ERWIN, *contra.*—It is said that defendant was benefitted by the verbal agreement. So far as the facts appear, it was not so. The amount he recovered was less than the amount he was to receive by the original agreement. The party who has to pay "less," cannot complain; and the facts show that the plaintiff in error did not have to pay "more."

As to the consideration, the law will lay hold of the slightest circumstances to uphold a contract. A benefit received, or an injury or inconvenience avoided will be sufficient. So will an inconvenience to which the other party is subjected, or the preventing of litigation. A mere moral obligation will sustain a contract.

In the case referred to by counsel, where sailors were promised additional wages for great exertion in a storm, and it was held that the contract could not be

enforced, it was believed to be against public policy ; as it would induce sailors, in every such case, to hold back for higher wages.

A *past* consideration, accompanied by a promise morally binding, will sustain a contract ; as, where a man after he arrives at full age, promises to pay a debt contracted during his minority.

As to verbal evidence varying a written agreement, a case from *Pickering*, goes farther than this. There, the instrument was · under seal : but the workman · finding that he had made a loosing bargain, stopped short. He was told that if he would go on, he should not suffer, but have a reasonable compensation. The workman recovered in assumpsit, although the instrument under seal was produced ; and it was contended, that the sealed instrument could not be varied by parol, and that there was a want of consideration. These objections were overruled.—9 *Pickering*, 298 to 305. This case overrules several of the cases relied upon, on the other side.

· But this was not such a distinct agreement as to require a distinct consideration ; it was an assent that the established prices should govern as to the amount to be paid. May not parties adjust their own differences ? If they had been about to go to law, might they not agree not to do so, but to settle by the town prices? And if they did so settle, would not such settlement be binding ? Say it was a distinct contract, and still the consideration was sufficient; for litigation was thereby avoided.

As to the costs on account of the number of witnesses, the objection cannot be sustained. The statute only provides, that not more than two witnesses shall be taxed to prove the same fact. To apply this rule, the attention of the Judge must be called to the

facts proved by the different witnesses : but this was not done here; nor could it be, for the witnesses were not examined. It is often uncertain what course a trial will take, A trial on the merits may be expected, for which purpose it may be necessary to have many witnesses in attendance ; but it may go off on demurrer or by plea in abatement. In such cases, the witnesses are not examined, yet the party is surely entitled to his costs. Of witnesses not examined, the Court cannot decide that more than two were summoned to prove one fact.—1 *Munf.* 268.

By Mr. Chief Justice SAFFOLD:

The action was *assumpsit*,—brought in Greene Circuit Court, by Perry, against the plaintiff in error, to recover an account for carpenters work.

There were various counts in the declaration, and the general issue was pleaded. A bill of exceptions shews, that the plaintiff below gave in evidence a written agreement, dated Greensboro', July 31, 1828, specifying the items of work to be done, size of the house, &c.; and by which Perry was bound to complete the work on or before the first of January next thereafter ; and Randolph to pay him at the same time the sum of nine hundred dollars. This agreement was signed by both the parties, and to it was appended the following—"Any alteration in this building, either in diminishing the amount of the work, or measuring the same, subject to reduction or addition, according to the usual charges of mechanics."

After which, the defendant gave in evidence the following written agreement : " Greensborough, August 23, 1828—Whereas, since the agreement between Rolls Perry and R. C. Randolph, for the

wood work of a brick building, dated July 31, 1828, said Randolph has signified his intention to alter the plan of the house; it is therefore agreed by said parties, that there shall be a reduction in the contract for any work not required in the actual plan of the building, or there shall be an addition for work over and above the contract of 31st of July, which said reduction or allowance to be governed by the rates exhibited in said first mentioned contract." This was also signed by both the parties.

Randolph introduced, as further evidence on his part, Perry's receipt for six hundred and sixty eight dollars and fifteen cents, expressed to be paid upon the "within account." On the opposite side of the same paper, was an account stated in Randolph's hand writing, containing various items of work, with prices set opposite each, amounting to seven hundred and thirty eight dollars and seventy five cents.

The record further states, that then the counsel for Perry, introduced evidence to prove, that a portion of the work was done in a manner superior to what was required by the *plan* of the house, and also other verbal evidence from which the jury might draw the conclusion, that *after the execution of the contract*, and the actual *completion of the house*, the plaintiff and defendant had agreed to abandon the contract in writing, and to be governed in their settlement by the " Tuskaloosa bill of prices," without proof of any new consideration arising between the parties, or any request on the part of the defendant, that the contract in writing should be abandoned. This evidence, being objected to by the counsel for Randolph, was admitted by the Court.

A second bill of exceptions shews, that after the rendition of judgment against the defendant below,

he moved the Court to instruct the clerk to exclude from the taxation of costs, the attendance of a portion of the plaintiff's witnesses. The facts appearing, on which the motion was founded were, that about sixteen witnesses had, at different times, been subpœnæd for the plaintiff; that of this number, seven were in actual attendance at the trial, but that four only were examined. The motion was refused, on the ground that the Court would not interfere.

The assignments of error, are,

1. That the Court admitted the evidence objected to, as stated in the first bill of exceptions.

2. That instructions, relative to the taxation of costs were refused, as stated in the second bill of exceptions.

On the first point, the enquiry arises, whether the promise was of such a nature, and founded on a sufficient consideration, to render it valid and binding? The rule of law in this respect, is said to be, that, "if there be not a strict and undoubted moral obligation, even an express promise to do that which the law did not render compulsory, will not afford a cause of action, in the absence of an adequate consideration."[a]

[a] Chit. on Con. 12.

It will here be observed, that the question is not whether the defendant below was bound to pay for the work, a fair, and adequate price. To this extent, he was bound by the contract under which the work was done. The original agreement, which was in writing, particularly described the contemplated building, and fixed the price for the work to be done upon it at nine hundred dollars; also stipulated, that for any alteration in the plan, an addition or reduction of the price should be made, "according to the usual charges of mechanics."—

These must be assumed to have been reasonable and adequate charges, sanctioned by the custom and usage of that place—Greensborough, not Tuskaloosa.

The subsequent written agreement, contains little, if any .thing more than a mere repetition of the same, that for the intended change in the plan, the reduction, or additional allowance, for such work should be governed by the rates exhibited in said first mentioned contract. Under this stipulation, the only doubt that can arise, if any, is, whether the parties intended that the reduction, or addition of price for the alteration, should be in proportion to the nine hundred dollars for the original plan, computing the amount according to that standard, or whether the *data* for this computation should be the "usual charges of mechanics."— But this question is not presented. The question is, whether the prior agreements were abandoned, and a subsequent valid contract entered into, that the entire work should be paid for according to "the Tuskaloosa bill of prices." By this we understand is meant, a general bill of rates, including the various items of mechanical work necessary in such building, and which has been adopted by the mechanics and used at Tuskaloosa.

That the parties were competent, before this work was done, to agree on the Tuskaloosa prices, or any other standard that was not so grossly unjust, as to furnish a presumption of fraud or unfairness, is not to be doubted. In that case, the work to be done would be a sufficient consideration, and the bargain would fix the price. In the case before us, the work had been *completed* under a valid contract for what we must assume to have been an adequate consideration; so it stood, binding on each party, at the time

of the supposed subsequent agreement, now insisted upon in lieu of the former It is shewn, that the defendant below did not request the substitution of the Tuskaloosa prices, in lieu of those under which the work was done; also that no new consideration moved between the parties as the foundation of this promise. It is perfectly clear, that if the alleged subsequent agreement is void, the former remains in full force. Then what consideration is there to sustain the subsequent agreement which it was supposed the jury might infer from the evidence offered. The liability otherwise existing was adequate to the work; such at least is the legal presumption. If so, there was not even a moral obligation to pay more, or according to any different standard. It cannot be viewed as a compromise of any doubtful right; for no settlement was consummated; there was no liquidation of the demand; but the claim was left no less subject to litigation than before. We can not infer, if that could avail any thing, that an adoption of the different standard, would in any degree have facilitated the settlement. It therefore results that the promise or contract, if such was expressed, was *nudum pactum* and void;[a] consequently there was error in the admission of the evidence tending to prove it.

[a] Chit on Con. 11, 12, 13.

On the second assignment it may be remarked, that the statute of 1807 provides, that, in no bill of costs shall there be allowed the charges of attendance of more than two witnesses to any one fact. The facts here contemplated, must be understood to include all that are material, and which may necessarily arise in the progress of the trial, as well incidentally or collaterally, as those directly in issue. It can not be presumed to have been the intention of the Legislature to disallow the attendance of witnesses to

the successful party where, in consequence of the course adopted by the adverse party, or the decision of the Court, the course of the trial has been diverted from the ordinary channel, so as to exclude or supersede the necessity of evidence, which would otherwise be proper. The object seems to have been only to protect the party against an unnecessary and oppressive accumulation of costs from the attendance, or introduction of more than two witnesses to each material fact necessary to be proven. From the difficult nature of the subject, much must depend on the discretion of the Judge trying the cause. But admitting, as held by this Court, in *Smith* vs. *Donaldson*, that the construction of this statute is a subject of revision in error: yet the particular facts and circumstances under which the decision was made, must be more definitely shewn than has been done in this case, before we can pronounce error in the decision. The record does not ascertain the number of material facts involved in the trial; nor preclude the idea that some admission on the part of Randolph—some decision of the Court, or other circumstance, may not have obviated the necessity of proof, which otherwise would have been indispensable, on the part of the plaintiff below.

We must, therefore, say, that no error on the latter point has been sufficiently disclosed. But on the first, the judgment must be reversed, and the cause remanded.